UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| KATHY RUSSELL; TIFFANY ASHLEY; and KRYSTAL STASKO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TYSON FARMS, INC. d/b/a RIVER VALLEY INGREDIENTS; JASON SPANN; HYDRASERVICE, INC., and JASPER WATER WORKS AND SEWER BOARD, INC.<br><br>Defendants. | Case No.: 5:19-cv-1179-LCB |

## MEMORANDUM OPINION AND ORDER

### I. Background

The complaint in this case was filed on July 24, 2019. By agreement of all parties, the present case was consolidated with *Ashley, et al, v. Tyson Farms, Inc.,* 5:19-cv-1180-LCB, which was filed in this Court on the same day.[1] (Doc. 56). In the same order, this Court also stayed general discovery pending a ruling on the various motions to dismiss filed by the defendants. Before the Court is Defendant

---

[1] Unless otherwise indicated, all citations to the record in this memorandum opinion refer to the record in case number 5:19-cv-1179-LCB, *Russell, et al. v. Tyson, et al*.

Jasper Water Works and Sewer Board's ("JWW") motion to dismiss. (Doc 9)[2]. The motion is fully briefed and is ripe for review. For the reasons that follow, the Court finds that JWW's motion to dismiss is due to be **DENIED**.

A brief summary of the alleged facts is all that is necessary for the resolution of the present motion. The basis of the complaint is a wastewater spill that occurred on or about June 6, 2019, and the resulting contamination of portions of the Black Warrior River. The Plaintiffs, a proposed class, assert that they are individuals and businesses who were harmed by the spill. The Defendants are Tyson Farms, Inc., the owner of the food-processing facility at which the spill allegedly originated; Jason Spann, the manager of the plant in question; HydraService, Inc., the manufacturer of the equipment that allegedly failed and caused the spill; and JWW, a non-profit corporation that provided water to citizens of Walker County, Alabama.

The Plaintiffs have asserted various state law claims against the Defendants. According to the Plaintiffs, Tyson maintained multiple retention ponds on its property for the purpose of treating the wastewater generated by its food-processing operations. The Plaintiffs claim that a pipe, which was meant to transfer partially treated wastewater from one pond to another, failed or malfunctioned thereby causing untreated wastewater to spill into the river. Defendant HydraService is

---

[2] JWW filed a nearly identical motion to dismiss in the companion case, *Ashley, et al. v. Tyson Farms, et al. See* (Doc. 9) in 5:19-cv-1180-LCB. This memorandum opinion and order applies equally to both motions.

alleged to have manufactured and installed a defective pump which caused the pipe to fail. The Plaintiffs claim that JWW failed to properly notify them of the spill and failed to take proper measures to ensure their safety both before and after the spill.

**II.    JWW's Motion to Dismiss**

In its motion to dismiss, JWW argues that the Plaintiffs' claims, all state law causes of action, are preempted by federal law. Specifically, JWW claims that the Safe Drinking Water Act ("SDWA") 42 U.S.C. §§ 300f et seq, occupies the field of drinking-water regulation and leaves no room for regulation through state common law tort claims. JWW also contends that the Plaintiffs' claims are preempted because, it says, they conflict with the SDWA.

**A. Legal Standards**

JWW moves to dismiss under Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957)(*quoting* Fed. R. Civ. P. 8(a)). When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). Generally, a complaint

should include "enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory.'" *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011), *quoting Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001).

In *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485–87 (11th Cir. 2015), the Eleventh Circuit affirmed a district court's dismissal of a case, pursuant to Fed. R. Civ. P. 12(b)(6), on preemption grounds and discussed preemption as follows:

> "In pre-emption cases, the question is whether state law is pre-empted by a federal statute, or in some instances, a federal agency action." *POM Wonderful LLC v. Coca–Cola Co.*, ––– U.S. ––––, 134 S.Ct. 2228, 2236, 189 L.Ed.2d 141 (2014) (*citing Wyeth v. Levine*, 555 U.S. 555, 563, 129 S.Ct. 1187, 1193, 173 L.Ed.2d 51 (2009)). The Supremacy Clause of the United States Constitution provides "the Laws of the United States ... shall be the supreme Law of the Land." U.S. Const. Art. VI, cl. 2. "[W]e have long recognized that state laws that conflict with federal law are without effect." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008) (citation and internal quotation marks omitted); *see Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 30, 116 S.Ct. 1103, 1107, 134 L.Ed.2d 237 (1996) ("[T]he Supremacy Clause requires courts to follow federal, not state, law.").
>
> The Supreme Court has identified three circumstantial categories, where federal law preempts state law. First is express preemption, where Congress defines "explicitly the extent to which its enactments pre-empt state law." *English v. Gen. Electric Co.*, 496 U.S. 72, 78, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). "[W]hen Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *Id.* at 79, 110 S.Ct. at 2275; *see Chamber of Commerce of U.S. v. Whiting*, 563 U.S. ––––, ––––, 131 S.Ct. 1968, 1977, 179 L.Ed.2d 1031 (2011)(noting the plain

wording of a federal statute "necessarily contains the best evidence of Congress' preemptive intent"); *Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1167 (11th Cir.2008) ("Express preemption occurs when Congress manifests its intent to displace a state law using the text of a federal statute.").

Second is field preemption. *English*, 496 U.S. at 79, 110 S.Ct. at 2275. "[I]n the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id.*, 110 S.Ct. at 2275.

> Such an intent may be inferred from a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."

*Id.*, 110 S.Ct. at 2275 (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)) (alteration omitted). "Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards." *Arizona v. United States*, ––– U.S. ––––, ––––, 132 S.Ct. 2492, 2502 (2012).

Third is conflict preemption, which occurs when "state law is pre-empted to the extent that it actually conflicts with federal law." *English*, 496 U.S. at 79, 110 S.Ct. at 2275. Conflict preemption exists "where it is impossible for a private party to comply with both state and federal requirements or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.*, 110 S.Ct. at 2275 (*quoting Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)) (citations omitted). "[S]ince our decision in *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819), it has been settled that state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (*quoting Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981)); *see Baptista v. JPMorgan Chase Bank,*

*N.A.*, 640 F.3d 1194, 1197 (11th Cir. 2011)(recognizing "the proper preemption test asks whether there is a significant conflict between the state and federal statutes—that is, the test for conflict preemption").

In the present case, JWW argues that the Plaintiffs' claims are subject to field preemption and conflict preemption. The Court now turns to JWW's arguments.

### B. JWW's Arguments

#### a. The SDWA occupies the field and leaves no room for state common law claims.

JWW first argues that the Plaintiffs' claims are preempted because, it says, Congress intended to occupy the field of drinking-water regulation when it passed the SDWA. JWW contends that allowing a suit for common law tort claims would frustrate this purpose and, therefore, is preempted.

The primary case JWW relies on in support of that argument is *Mattoon v. City of Pittsfield*, 980 F.2d 1 (1st Cir. 1992), in which the First Circuit characterized the SDWA as a "comprehensive federal statutory scheme[]," and held that it preempted a federal common law nuisance claim as well as a § 1983 claim. In *Mattoon*, the First Circuit aptly analyzed the SDWA, noting its purpose and broad scope and explaining how it provides for the federal government to work with the states to regulate the types and amounts of contaminants in their water supplies. The First Circuit held that "the regulatory scheme established under the SDWA evinces a clear congressional intention to entrust the regulation of public drinking water systems to an expert regulatory agency rather than the courts." *Id.* at 4–5. Therefore,

the Court reasoned, the appellant's federal common law nuisance claim and its § 1983 claim were preempted.

JWW quotes the above language in support of its proposition that the holding in *Mattoon* should apply with equal force to its claim in the present case. However, the analysis in *Mattoon* was focused on whether "*federal* statutory or *federal* common law standards should control the field." *Id*. at 4. The primary case relied on in that analysis was *Milwaukee v. Illinois & Michigan*, 451 U.S. 304 (1981), in which the United States Supreme Court held that the Clean Water Act, 33 U.S.C. § 1251 et seq., ("CWA"), a similar environmental protection act[3], preempted federal common law nuisance claims seeking to abate water pollution. In addressing an argument similar to the one raised by JWW, the Supreme Court explained that the analysis of whether a federal statute preempts state law is different from the analysis regarding preemption of federal common law:

> Contrary to the suggestions of respondents, the appropriate analysis in determining if federal statutory law governs a question previously the subject of federal common law is not the same as that employed in deciding if federal law pre-empts state law. In considering the latter question "'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977) (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). While we have not hesitated

---

[3] The Eleventh Circuit has compared the CWA with the SDWA in interpreting the meanings of words contained in the statutes. *See* Friends of the Everglades, Inc. v. S. Fla. Water Mgmt. Dist., No. 02-80309-CIV, 2005 WL 8156096, at *1 (S.D. Fla. July 5, 2005)(comparing "the express inclusion of Indian tribes as 'persons' in several federal pollution control laws" including the CWA and the SDWA).

> to find pre-emption of state law, whether express or implied, when Congress has so indicated, *see Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978), or when enforcement of state regulations would impair "federal superintendence of the field," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), our analysis has included "due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 243, 79 S.Ct. 773, 778, 3 L.Ed.2d 775 (1959). Such concerns are not implicated in the same fashion when the question is whether federal statutory or federal common law governs, and accordingly the same sort of evidence of a clear and manifest purpose is not required.

*City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 316–17 (1981). Thus, the Plaintiffs' contention that *Mattoon* does not support JWW's argument is well taken. *Mattoon* says nothing about the relationship between the SDWA and *state* common law tort claims, and its holding that the SDWA preempts federal common law nuisance claims does not imply that it also preempts state common law tort claims. JWW cited other cases in support of its proposition. However, like *Mattoon*, those cases did not discuss the relationship of the SDWA, or any other federal statute, with state law causes of action.

In its response to JWW's motion to dismiss, the Plaintiffs cite *International Paper v. Oullette*, 479 U.S. 481 (1987), in which the Supreme Court discussed the relationship between state law and the Clean Water Act, a similarly constructed federal environmental statute. In *Oullette*, the plaintiff, a Vermont landowner, sued a New York pulp mill in a Vermont state court for allegedly discharging pollutants

8

into a Lake Champlain that damaged his property in Vermont. The question presented was "whether the [Clean Water] Act pre-empt[ed] a common-law nuisance suit filed in a Vermont court under Vermont law, when the source of the alleged injury is located in New York." *Id.* at 483. The Court thoroughly analyzed the CWA and specifically noted that the Act allowed states to enact their own water-pollution regulations so long as those regulations were no less stringent than the regulations provided in the Act[4]. In contrast, affected states that are subject to pollution originating in source states have only the right to notice and to comment before the issuance of a federal or source state permit. The Court held that applying an "affected State's law to an out-of-state source [] would undermine the important goals of efficiency and predictability in the permit system." *Id.* at 496. Accordingly, the Court held that a plaintiff in an affected state could not sue an out-of-state defendant in the plaintiff's home state under that state's common law.

However, the Court went on to hold as follows:

> Our conclusion that Vermont nuisance law is inapplicable to a New York point source does not leave respondents without a remedy. The CWA precludes only those suits that may require standards of effluent control that are incompatible with those established by the procedures set forth in the Act. The saving clause specifically preserves other state actions, and therefore nothing in the Act bars aggrieved individuals from bringing a nuisance claim pursuant to the law of the source State. By its terms the CWA allows States such as New York to impose higher standards on their own point sources, and in *Milwaukee* [*v Wisconsin & Michigan*, 451 U.S. 304 (1981)] we recognized that this authority

---

[4] The SDWA contains similar provisions regarding state regulations.

> may include the right to impose higher common-law as well as higher statutory restrictions. 451 U.S., at 328, 101 S.Ct., at 1798 (suggesting that "States may adopt more stringent limitations ... through state nuisance law, and apply them to in-state dischargers"); *see also Committee for Jones Falls Sewage System v. Train*, 539 F.2d 1006, 1009, and n. 9 (CA4 1976) (CWA preserves common-law suits filed in source State).

*Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 497–98, 107 S. Ct. 805, 814, 93 L. Ed. 2d 883 (1987). Thus, the Supreme Court held that a saving clause in the CWA preserved common law suits as long as the suits were filed in the proper jurisdiction, i.e., the state containing the point source of the pollution. The Court then held that, "[a]lthough Congress intended to dominate the field of pollution regulation, the saving clause negates the inference that Congress 'left no room' for state causes of action." *Ouellette*, 479 U.S. at 492. "Because the Act specifically allows source States to impose stricter standards, the imposition of source-state law does not disrupt the regulatory partnership established by the permit system." *Id.* at 498. "Nothing in the Act prevents a court sitting in an affected State from hearing a common-law nuisance suit, provided that jurisdiction otherwise is proper." *Id.* at 500.

The saving clause from the CWA[5] that the Supreme Court relied on in *Oullette* consisted of two sections of the Act which provide, in pertinent part:

---

[5] In its reply brief, JWW notes that the saving clause in the SDWA is "almost identical" to the saving clause in the CWA. (Doc. 35, p. 4).

> Except as expressly provided ..., nothing in this chapter shall ... be construed as impairing or in any manner affecting any right or jurisdiction of the States with respect to the waters (including boundary waters) of such States.

33 U.S.C. § 1370; and,

> Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief....

33 U.S.C. § 1365(e). Those sections are similar to saving clause contained in the SDWA. 42 U.S.C. § 300g-3(e), provides:

> Nothing in this subchapter shall diminish any authority of a State or political subdivision to adopt or enforce any law or regulation respecting drinking water regulations or public water systems, but no such law or regulation shall relieve any person of any requirement otherwise applicable under this subchapter.

Additionally, 42 U.S.C. § 300j-8(e), provides:

> Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any requirement prescribed by or under this subchapter or to seek any other relief.

This Court finds that the saving clause in the SDWA serves the same purpose as the clauses in the CWA. Thus, for the same reasons put forth by the Supreme Court in *Oullette*, this Court holds that state law causes of action like those alleged in this case are not preempted by the SDWA. Accordingly, nothing in the SDWA would prevent an Alabama trial court, or this Court sitting in diversity, from hearing a common law tort action arising out of an incident that occurred within Alabama.

As noted, JWW concedes that the savings clause in the CWA is "almost identical" to the savings clause in the SDWA. (Doc. 35, p. 4). However, it attempts to distinguish *Oullette* by referring to a portion of the opinion that appears to support its argument. *See* (Doc. 35, p. 4)("Section 300j-8(e) is expressly limited to the *section* of the SDWA that provides a private right of action, i.e., the SDWA's citizen suit provision…. The Supreme Court [in *Oullette*] has already noted the limited scope of almost identical savings clauses."). However, the language quoted by JWW is from a section of *Oullette* in which the Court was discussing the question of whether the CWA allows plaintiffs from an affected state to bring suit against out-of-state polluters. *See Oullette,* 479 U.S. at 492-94. JWW ignores the implication of the ultimate holding in *Oullette*, i.e., that common law causes of action brought against a source state under the source state's law are not preempted.

JWW cites other cases which discuss the preemptive effect of saving clauses from other statutes such as *Geier v. Am. Honda Motor Co.,* 529 U.S. 861 (2000)(holding that the National Traffic and Motor Vehicle Safety Act's savings clause did not foreclose or limit operation of ordinary preemption principles), and *Am. Telephone & Telegraph Co.*, 524 U.S. 214 (1998)(holding that a section of the Communications Act preempted state law claims). However, none of the cases cited in JWW's reply involve the SDWA, the CWA, or any other similar environmental statute. JWW cites portions of those cases in which the Supreme Court discusses

how the saving clauses in other statutes do not preclude preemption. However, none of the cases cited by JWW alter the holding in *Oullette*.

### b. The Plaintiffs' claims conflict with the SDWA.

JWW next argues that the Plaintiffs' claims are preempted because, it says, the claims conflict with the SDWA. JWW discusses various requirements of the SDWA and cites to portions of the Act mandating that the Administrator of the EPA exercise his or her judgment in carrying out certain tasks. However, as discussed in the previous section, the Supreme Court took similar requirements from the CWA into consideration when it held in *Oullette* that state common law claims were not preempted. That Court thoroughly addressed the dual roles of states and the EPA in enacting and enforcing regulations concerning water pollution. JWW's argument that such lawsuits "would interfere with Congress's intent and the processes it mandated for development of national public drinking water regulations" was considered and foreclosed in *Oullette*. JWW has cited no contrary authority.

### III. Conclusion

For the foregoing reasons, the Court finds that the SDWA does not preempt the state law claims brought by the Plaintiffs in this case. Accordingly, JWW's motion to dismiss (Doc. 9) is **DENIED**.

**DONE** and **ORDERED** March 30, 2020.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE